and we will wait a moment to start until the courtroom settles. I'm wondering your honors and counsel, the 13th amendment's text in history together with principles of federalism and separation of powers support vacating Mr. Leahy's section 245 conviction for two reasons. First, as a constitutional matter, Congress exceeded its authority under the 13th amendment when it promulgated section 245 here. Because while the statute's targeting violence based on racial animus and one's use of a public facility, while that targets discrimination, that's unfortunately common post vellum, it does not target the restriction of freedom or a restriction that's akin to the condition of servitude that was common ante vellum, thus cannot be fairly considered as combating badge or incident. I don't see how we have authority to do what you want us to do given Jones. If what you're really doing is bookmarking with us so that you can take an argument for overruling Jones at the Supreme Court, okay, I guess, but I don't see how we can do anything about that. Judge Newsom, I will fully concede that I think there's a line, and I will give you that line in a second, but at a minimum, I do think there's a clear tension between Jones and the civil rights cases that perhaps this court on Bonk or the Supreme Court . . . Versus civil rights cases came out in an era that Plessy versus Ferguson came out in. I mean, a lot of law that is pretty universally considered not good anymore. I cannot debate that at all. I think the best way to address that is the uncomfortableness, I think, of this issue in this case is we're dealing with a very sensitive topic, and we're dealing with, unfortunately, the institution of slavery in this country having been race-based, and racial discrimination just permeates through modern-day offenses. I will spend some time and maybe transition to this second point, but I do want to bookmark, as you were saying, Judge Newsom, even though we have case law that's quite antiquated, maybe from 100 years ago, Jones did not overrule the civil rights cases. In fact, it cited specifically the civil rights cases for what a badge and incident of slavery is. But, I mean, doesn't Jones say that Congress is empowered by Section 2 to rationally determine what the badges and incidents of slavery are? I think there's a way to read that that's . . . it's largely dicta in that context because the other line, and I think Jones specifically, when it cites the civil rights cases, also says whatever else they may be, the badges and incidents of slavery include, and it's citing verbatim, or at least quoting the civil rights cases, that these restrictions of freedom, these fundamental freedoms that Section 1 of the 13th Amendment is targeting, not only just slavery itself, but the inability to form a contract, be a witness against another individual on property. This real institution of slavery that is master-servant, an individual is a property of another. That's what we're really targeting at. But I think this . . . I mean, but, you know, I mean, even if we went . . . let's just entertain this for one second. I mean, even if we could decide ourselves, anew and afresh, what badges of slavery are, and whether or not Congress had appropriately determined this was a badge of slavery, why isn't it a badge of slavery to not be able to use public roads that you pay tax money to upkeep? I mean, why is that not a badge of slavery? It seems to me it's pretty clear it is. And this, I think, transitions perfectly to the second point, because when we're having our constitutional argument here, the point is Congress itself is not empowered under the civil rights cases to decide what the badges and incidents of slavery are. However, and I think this gets right to the problem with the instructional errors and the sufficiency errors, I don't disagree at all with what you're saying, Judge Rosenbaum, and that's really the approach the Second Circuit took in the Nelson case, which is to say a statute that restricts your freedom, the ability to use a public park or the ability to enjoy a freedom of any other citizen would be, at least rationally or reasonably considered, a badge and incidents of slavery. And this is very, very important, I think, the entire linchpin of the case. Section 245, at least as instructed by the jury here and as construed, does not require and does not require a showing that Mr. Leahy here had any intent or did anything to actually prevent JT from using Starkey Road or the public facility here, Starkey Road, the way that it was indicted. The elements here are actually somewhat disaggregated. What you have is a prohibition against violence and then two motives. And I know the distinction is subtle, but it is meaningful here because I know this morning's theme is probably line drawing, so where do we draw the line as to what is a badge and incidents of slavery and what is a general assault statute or a bias motive-based statute? And that's really what Section 245 is getting at because the offenses here is, one, that you're motivated by someone's race, so racial animus, and two, it's the way the jury was instructed here. We were the party below that advocated for an instruction that said there had to be an intent. The jury had to show the because prong, prong four, had to show an intent to deprive JT the use of Starkey Road, the public facility. Not only did the government push back on that, there was no evidence. So the jury was only- There's no evidence that your client tried to run Mr. JT off the road at least three times? So I think there is evidence of that, of the incidents as well. And this isn't advocacy per se that I'm speaking of. This is directly coming from a sentencing court that found that there was not an intent, or at least there was not evidence of an intent to drive or harm Mr. Leahy off the road. We had incidental sideswipe and hitting, and at one point, Mr. Leahy's vehicle- I mean, it seems to me that it's pretty clear there was evidence, and some of it was actually described by the court. One of the things that was described was when Mr. Leahy said, you have to keep these people in their areas. I mean, in other words, Starkey Road is not an area where a black person is allowed in Mr. Leahy's view, and he was keeping him off of Starkey Road because he didn't think Mr. Leahy, or that JT could use Starkey Road. So if I can address both Judge Abudu and Judge Rosenbaum those points, because this is again, it's a little bit of a messy case because it's so record intense, and there's inferences that need to be drawn from these admittedly abhorrent statements. So on the first, the best piece of evidence that I could show or point to when it comes to the intent to drive off the road, this would be on Doc 115, the sentencing court, and on page 7, the court's saying it's obnoxious and downright evil, as the mile was, I don't think there was an intent to cause bodily injury. I don't think there was more of an intent to intimidate the victim in this case, and there was the enhancement for the assault on the victim was not applied. So that's probably the strongest piece of evidence. The keep them in their areas comment is very, very critical here because the context in which that statement was made was in response to Mr. Leahy falsely saying that JT was the instigator. So when he's making that- What difference does that make? I mean, he revealed himself, whether he revealed it through his lies or through his truthful statements, why does it matter that he revealed what his purpose was? He didn't just say that. He also said, it was crazy that the officers were going to let this monkey effing beat up this effing suburban white kid and asked, what happened to America, bro? Y'all let the effing mother effers from the ghetto beat up the white suburban kid. Okay. Now to me, that is also saying, he's basically saying black people belong in the ghetto, white people belong in the suburbs. Black people cannot go outside of the ghetto. If they're outside of the ghetto, then whatever the ghetto may, whatever he perceives the ghetto to be, then they are using a facility that they cannot use and that he is going to keep them from using that. I mean, I don't understand how you can construe these statements, especially with the area statements as anything other than showing that it was Mr. Leahy's intent to keep Mr. JT off the road simply because he was black. I cannot stand here and defend the abhorrent nature of the comments. However, I do think if you look at the context and what happened, when the police showed up, Mr. Leahy is lying to them saying that JT was the aggressor. And in the context of saying that he's the aggressor, he is making a comment of saying that when JT was in this area, he got out of his vehicle and he was the one that was hitting him. So I think that 100% in why we have not raised a prong three racial animus argument here, there's more than enough sufficient evidence to show this really repugnant comments. But when we look at the intent to keep JT out of a particular area, the entire trial was replete and the entire defense was there was no evidence and there was nothing to have to do with it. Yes, I just disagree with you. To me, that is clear evidence and it doesn't matter if he was doing it as a false exculpatory or if he was being truthful or whatever. He said, you people need to, you need to, you officers need to keep these people out of these areas. I mean, how much clearer could he be that he didn't think that black people should be able to use the roads? I think the clearest and the government has raised this in their argument, when you have a direct statement of the individual themselves saying that I am trying to keep out or I was the one who was intentionally targeting like the cases we have where someone is attacking someone to push them out of a park or otherwise. I fully recognize these are subtle distinctions, but they're important distinctions when you put them in a combination of the jury instruction that we were asking for. And I think if the jury had been instructed on the intent to deprive, we probably wouldn't be having this appeal because we'd have a different jury instruction. We wouldn't have had the jury questions. Theory of defense would have been entirely different. But the fact that- Talk about context. What about the context that this would happen in a predominantly white area where it seems the black population, to the extent it exists, is concentrated. Now you have Jason going into what is recognized a predominantly white area and being told by your client that he is not welcome there. Does that not also implicate or at least illustrate a little bit or illuminate the comments that Judge Rosenbaum just quoted? I think, well one, I don't think that was the theory that was presented below. In fact, the evidence really, and I see my time is up. I can just briefly- Josh, please respond to that. And again, I just want to stress the fact that because we're dealing with such a racially animated and really just abhorrent conduct, it makes it difficult because nobody here would say that Mr. Leahy shouldn't have been charged under the state or had a bias or motive in his conduct. But the way the government had presented this case and the district court even acknowledged, there really wasn't a strength to the argument that he had any awareness that he was on a particular road or Starkey Road or any type of public facility. It just happened to be the happenstance of where it occurred. The evidence is, the inference is really here is when JT pulled off to the side of the road. Let's say he pulled into a parking lot otherwise and were outside of a quote unquote public facility. This exact same thing would have occurred. And that's really where the defense lied here. And so I'll just bookend it with this is I do think that intent to deprive in the Second Circuit, I agree with you Judge Rosenbaum. But here we just didn't have that and it really just permeated throughout the entire trial causing a lot of confusion about that fourth element, which was the entire defense. All right. Thank you very much, counsel. You've reserved three minutes for rebuttal. And now we'll hear from the government. Good morning, your honors, and may it please the court, Jenea Lamar for the United States. The defendant's appeal asked this court to disregard governing Supreme Court precedent and to rewrite the statute of conviction. Because this court is not authorized to do so, and because Section 245 is constitutional both facially and as applied, the United States asks that this court affirm Leahy's convictions. Turning first to the constitutionality of Section 245B2B, it is constitutional as every court has found it when considering the question, in particular the Eighth Circuit, the Second Circuit has found that Section 245 is constitutional because it criminalizes conduct that has rashly been identified by Congress as badges of incidents of slavery. Can I ask you a quick question? And this sort of, in my mind, is the pivot between the two main issues in this case. I think you're obviously right about Supreme Court precedent. Jones controls this case. I don't see what we could do about that. But the Second Circuit, at least as I read its opinion, transitioning sort of to the second, the instructional issue, do I have this right that the Second Circuit construed the statute to require specific intent to deprive in order to save its constitutionality? No, Your Honor, I don't think it required that. I think it was discussing the evidence that was before it. But I think what's critical when discussing the Second Circuit opinion in particular as to the but for requirement or the because requirement is that that opinion was issued before the Supreme Court's opinion in Burrage. And so that's another governing precedent in this case. And in that opinion, the Supreme Court said that statutes that require proof that something happened because of something else require but for causation. That wasn't the standard that Nelson was applying. And so Nelson isn't good law for that part of its discussion. Speaking to the but for element, the Supreme Court found that it requires but for causation. That is, if you remove a certain element, the incident wouldn't have happened. And in this case, the government proved that. That is what was required. And that is what the statute says. It says that you must prove beyond reasonable doubt both that the defendant acted because of a person's race and because a person is using a public facility. It does not require anything else. The defendant asked this court to rewrite the statute to require specific intent. And that's not in the statute. And there's no basis either in the statute or in the constitution to require this court to rewrite the statute as the defendant prefers. Well, I think that's the point, though, from your friend on the other side is that there's no question that this was racially motivated. But where the incident happened just happened to be a coincidence. And that it wasn't that Mr. Leahy intended to drive him off of a public road. He just didn't want JT in his vicinity at all, wherever JT happened to be. So I do think that there is more discussion necessary about that second piece of the statute that speaks to the where. Sure, Your Honor. And I think there are two responses to that. Because it touches on two different issues. So the first issue that it touches on is the sufficiency claim that the defendant raises. And to succeed on sufficiency, it's not sufficient to say, or it's not enough to say, that I have some other interpretation of the evidence. He has to show that there was no reasonable interpretation to support the jury's verdict. When reviewing claims for sufficiency, this court makes all inferences in favor of the So the fact that the defendant would offer something else, would argue something else, does not change the fact that the jury's verdict was reasonable and was supported. As to the legal issue of what was required for because of the But it was supported because of where the incident happened, not necessarily because Mr. Leahy intended to engage in the behavior in that particular location in advance.  That's not a real distinction I'm making. That is a distinction, but I think that's an incorrect view of the evidence. It was not just that this happened on a road. This was, as this court has discussed, the defendant in this instance specifically said, after attacking the victim, you have to keep these animals, these criminal Negroes, out of this area. You have to keep them in their area. Inherent in that is a statement that the defendant believes the victim should not be allowed to use this public facility, use this public road. Additionally, as I believe Judge Arrudo, you were speaking of previously, it's not just that statement. It's also what the defendant did. The jury was instructed, and no one objected, the jury was instructed that they were able to infer that the defendant intended the reasonable and expected consequences of his actions. Here, when the defendant approached the victim, only because he was black and driving down this road, when he gestured threateningly into the car, acting as if he was shooting into the car where the victim was driving with his family, when he started yelling slurs at him, calling him the N-word, when he multiple times tried to run him off of the road, when he tried to push him off the road from the side, when that didn't work and he tried to follow closely behind him to force the car to spin out, that would force the victim to lose control of the car, when he then again tried to knock him over to the side across the median and into oncoming traffic, all of those actions demonstrate that the defendant was intent upon the victim's use of the road. He was, in fact, willfully interfering with the victim's use of the road and that evidence also speaks to his intent. Your Honor, I just wanted to speak briefly to a couple of things that were mentioned by opposing counsel, just with some time that I have left. While in his sufficiency claim, the defendant again asked this court to rewrite the statute. He asked this court to impose some specific standard as to Starkey Road in particular. That is not required. It is not required that the government prove that the defendant had a particular feeling about the road where this happened. And that's clear from the statute. Congress did not write a statute to protect a particular road. They wrote a statute so that all people could be free to use all public programs, all public facilities, free from violence because of their race and because they were exercising their rights. And so we know, looking at the statute, that what was required, as the Supreme Court has said, is but for causation. That is, the defendant would not have acted but for the victim's race and the victim's use of this public facility. Because that is clear, because there was sufficient evidence for that, because the law governing these issues are clear, the United States asks that this court affirm Leahy's convictions. Thank you. Thank you, counsel. All right, Mr. Beshear, you have three minutes. Thank you, Your Honors. So I'm not going to belabor the Jones point, but I do want to pick up exactly what you're saying, Judge Newsom, because I think that's spot on. The Nelson analysis, relying on Jones, took a constitutional avoidance approach. And I know my friend on the other side is saying the Supreme Court has said what this statute means. The Supreme Court has actually not spoken to what the because and the because of in this statute. It's a dual intent. But they've talked about because of in lots of statutes, right? Absolutely. And I think that is, when we're talking about but for causation, it's the devil's in the details, right? So here, when we look at the Nelson analysis and the jury instruction that we were advocating for, it's one thing to say because of results from someone's race. It's an easy concept to understand. When we look at what the jury even asked, and this goes exactly to your point, Judge Abudu, the jury's question here is the most classic, probably law school hypothetical of causation versus correlation. They just asked, is the fact that the two people on the road at the same time suffice for the wrong four element? That goes exactly to what but for causation is. And what you don't find in the jury instructions is any definition of what but for causation is. And I know the Supreme Court has talked about it, but we don't actually have that here. The jury was not instructed. And it may seem like an academic concept, but logicians or otherwise or formal logic experts will tell you that one thing happening at the same time as another is not sufficient. I really want to emphasize the point that when we have the jury instruction or the jury is not instructed on the specific intent of what because the use of a public facility because Judge Rosenbaum I know there's probably no convincing you at this point about I'm always open to hearing your argument. I got another minute left so I'll try. But no in all seriousness what I mean is there's that the area's comment or otherwise that going back to this fact that we're talking about a racial animus but are we actually talking about Mr. Leahy's intent to keep JT off of a public facility? What else does it mean? Maybe I'm missing some meaning here. The meaning here is derived and forgive me for just being as crass as I can. He is saying exactly what you're saying that inherently someone who looks like myself or otherwise is inherently prone to violence and that's why it's all racial in its connotation and the keep them in their areas is more was a reference to why JT and this is again a lie, why JT attacked Mr. Leahy but it didn't have anything to do. But what does their areas mean? And Well and that sort of is the question here right so. That's what I'm asking you so give me some other meaning it could have. It could just mean in general that keep them in in their areas meaning that whether it's not in necessarily a public facility or this particular road it could have been another public facility or otherwise that the intent but how does it not mean not on this road? And from the record here Starkey Road we try to put a map in it is about two miles long. We have no basis for there's nothing from the jury that could really infer that this particular part of Starkey Road is one area or another one having grown up in an area where there was a lot of turf wars this case really reminds me of. So he'd be okay if he were so the way we should construe it is that JT was allowed on some part of Starkey Road but not the part where the officers found them. Is that what the argument is? I mean I'm trying to figure out how it could possibly you know reasonably mean anything other than what it seems like it means. I say my time is over. Please answer the question. The first line is I don't think in the context and if you go back and look at the transcript I promise it really reads as saying as an explanation for why someone was inherently violent and not and I want to keep this person out of a particular area. The second part to that is we're harping on kind of the sufficiency aspect but really I think the strongest arguments here are on the instructional errors and that dovetails with the non-response to the jury's question because really this isn't an instance of if the evidence the way appellate you know the standard review works here recognize you're going to construe the evidence the light most favorable to the jury's verdict. But when we talk about instructional errors and whether Mr. Leahy had an opportunity and the jury was properly instructed in presenting his defense he didn't get a he wasn't allowed to argue or the jury wasn't instructed that had this offense occurred on Olmington Road or a different area that this offense wouldn't have occurred and very briefly the Starkey Road aspect because I just want to make sure I don't leave this hanging is that is not a statutory argument but it's a as the district court recognized an amendment a constructive amendment point the way the government talked we're not going to bring up a new argument over time and in rebuttal alright thank you counsel appreciate it alright our next case for today